# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

LANCE R. BISHOP, SR.,

                                    Plaintiff,

            v.                                          9:16-CV-1329
                                                        (MAD/ATB)
DR. DAVID PRESSER, ET AL.,

                                    Defendants.

LANCE R. BISHOP, SR., Plaintiff, pro se
JOHN F. MOORE, Asst. Attorney General, for Defendants

ANDREW T. BAXTER
United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable Mae A. D'Agostino, United States District Judge.  In this civil rights action, plaintiff alleges that his constitutional rights were violated when he received inadequate medical care while in the custody of the New York Department of Corrections and Community Supervision ("DOCCS") at the Clinton Correctional Facility ("Clinton") and Upstate Correctional Facility ("Upstate"). (Dkt. No. 33, Amended Compl. ("Am Compl.")).

Defendants Oliviera, Farooki, and Presser were all dentists employed at Clinton who separately evaluated plaintiff's complaints of severe tooth pain between December 2013 and February 2014. (Am. Compl. ¶¶ 10 -13).  During each dentist visit, plaintiff complained that the severe pain in his lower left molar and upper right molar interfered with his ability to sleep and to eat.  (Am. Compl. ¶ 21; Dkt. No. 64-1, "Pl. Decl." ¶¶ 3-

4, 6, 7).  Plaintiff requested that the affected teeth be extracted immediately. (*Id*.) None of the defendants performed the requested extraction. (Pl. Decl. ¶¶ 3-4, 6, 7) Instead, the defendants placed plaintiff on a waiting list for extraction, and prescribed him pain medication and antibiotics. (Pl. Decl. ¶¶ 4, 6, 7).  Before any surgery occurred, plaintiff was transferred to Upstate.  (Am. Compl. ¶ 16).

After being placed in Upstate, plaintiff again requested medical treatment for his tooth pain. (*Id*.)  On March 10, 2014, defendant Atkinson, a nurse, responded to plaintiff's emergency sick call request. (Am. Compl. ¶ 17).  She examined plaintiff's mouth, and determined that his condition did not qualify as an emergency. (*Id*.)  The next day, plaintiff submitted another sick call request, and was examined by a different Upstate nurse. (Am. Compl. ¶ 18).  This nurse referred plaintiff to a dentist, who promptly arranged for extraction of plaintiff's upper right molar. (*Id*.)  Plaintiff was eventually transferred to another correctional facility, where his lower left molar was extracted on June 12, 2014. (Am. Compl. ¶ 20).  None of the defendants were involved in these surgeries.

Presently before the court is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 57).  Plaintiff responded in opposition to the motion, and defendants filed a reply. (Dkt. Nos. 64, 68).  For the reasons set forth below, this court will recommend granting defendants' summary judgment motion, and dismissing plaintiff's Amended Complaint in its entirety, for failure to state a claim.

## I.    <u>Summary Judgment</u>

Summary judgment is appropriate where there exists no genuine issue of material

fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006).  "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial.  *Salahuddin v. Goord*, 467 F.3d at 273.  In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant.  *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

To be sufficient to create a "factual issue," in the context of a summary judgment motion, an allegation in an affidavit or verified complaint must not be conclusory or overly general.  *Smith v. Woods*, 9:03-CV-480 (DNH/GHL), 2006 WL

1133247, at *3 & n.10 (N.D.N.Y. Apr. 24, 2006).   Even where a complaint or affidavit

contains specific assertions, the allegations "may still be deemed conclusory if [they

are] (1) 'largely unsubstantiated by any other direct evidence' and (2) 'so replete with

inconsistencies and improbabilities that no reasonable juror would undertake the

suspension of disbelief necessary to credit the allegations made in the complaint.'" *Id.,*

2006 WL 1133247, at *3 & n.11 (quoting *Jeffreys v. City of New York*, 426 F.3d 549,

554-55 (2d Cir. 2005) ("While it is undoubtedly the duty of district courts not to weigh

the credibility of the parties at the summary judgment stage, in the rare circumstance

where the plaintiff relies almost exclusively on his own testimony, much of which is

contradictory and incomplete, it will be impossible for a district court to determine

whether 'the jury could reasonably find for the plaintiff,' . . .  and thus whether there are

any "genuine" issues of material fact, without making some assessment of the

plaintiff's account.")).

## II.    <u>Exhaustion of Administrative Remedies</u>

### A.    **Legal Standards**

The Prison Litigation Reform Act, ("PLRA"), 42 U.S.C. §1997e(a), requires an

inmate to exhaust all available administrative remedies prior to bringing a federal civil

rights action.  The exhaustion requirement applies to all inmate suits about prison life,

whether they involve general circumstances or particular episodes, and regardless of the

subject matter of the claim.  *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004)

(citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002).  Inmates must exhaust their

administrative remedies even if they are seeking only money damages that are not

4

available in prison administrative proceedings. *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g., Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90-103.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id*. § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id*. § 701.5(d). The court also notes that the regulations governing the Inmate Grievance Program ("IGP") encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a

grievance." *Id.* § 701.3(a) (Inmate's Responsibility).

Until recently, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies. *See Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004). The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

However, the Supreme Court has now made clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances." *Ross v. Blake*, 136 S. Ct. at 1857. "'[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.'" *Riles v. Buchanan*, 656 Fed. App'x 577, 580 (2d Cir. 2016) (quoting *Ross*, __ U.S. at __, 136 S. Ct. at 1857). Although *Ross* did away with the "special circumstances" exception, the other two factors in *Hemphill* – availability and estoppel – are still valid. The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three factors in determining availability. *Ross*, __ U.S. at __, 136 S. Ct. at 1858. Courts evaluating whether an inmate has exhausted his or her administrative remedies must focus on whether those remedies were "available" to the inmate. *Id.; see also Riles*, 2016 WL 4572321 at *2. An administrative procedure is "unavailable" when

> (1) "it operates a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved

> inmates; (2) it is "so opaque that is [sic] becomes, practically
> speaking, incapable of use"; or (3) "prison administrators
> thwart inmates from taking advantage of a grievance process
> through machination, misrepresentation, or intimidation."

*Riles, supra* (quoting *Ross*, __ U.S. at __, 136 S. Ct. at 1859-60).

In *Ross*, the Supreme Court gave examples of the circumstances under which each of the above would apply. *Ross*, __ U.S. at __, 136 S. Ct. at 1859-60. The first circumstance listed above involves a case in which the relevant "administrative procedure" lacks the authority to provide "any" relief. *Id.* at 1859. The second example is when the administrative procedure "exists," but is so complicated or "opaque" that no ordinary prisoner could "discern or navigate it." *Id.* Finally, administrative remedies are not available if prison administrators prevent inmates from taking advantage of the grievance process by misleading or threatening them, preventing their use of the administrative procedure. *Id.* at 1860.

In *Williams v. Priatno*, 829 F.3d 118, 123-27 (2d Cir. 2016), the Second Circuit considered whether administrative remedies had been "actually available" to an inmate plaintiff under *Ross*, after the district court granted the defendants' motion to dismiss for failure to exhaust. The plaintiff alleged that, while housed in the special housing unit ("SHU"), he drafted a grievance that he delivered to a corrections officer to forward to the grievance office on his behalf. *Id.* at 120-121. Approximately two weeks later, the plaintiff was transferred to a different facility. *Id.* at 121. He never received a response to his grievance, and alleged that it was never filed by the officer to whom he had given it. It was undisputed that plaintiff never appealed the grievance. *Id.*

The defendants in *Williams* argued that even if the grievance was never filed, the plaintiff was required to appeal it and complete the grievance process. *Id*. at 124. The defendants relied on a DOCCS regulation that provided that "an inmate may appeal a grievance 'to the next step' if he does not receive a timely response." *Id*. (quoting N.Y. Comp. Codes R. & Regs. tit. 7, § 701.6(g)(2)). The Second Circuit rejected this argument and held that, for an inmate in the plaintiff's situation, the regulatory scheme was so "opaque" and "confusing" as to be practically unavailable. *Id*. The Second Circuit found that DOCCS regulations "only contemplate appeals of grievances that [have been] actually filed . . . [and] give no guidance whatsoever to an inmate whose grievance was never filed." *Id*. Thus, *Williams* holds that "the process to appeal an unfiled and unanswered grievance is prohibitively opaque, such that no inmate could actually make use of it." *Id*. at 126.[1] *See also Medina v. Napoli*, 725 F. App'x 51, 53-54 (2d Cir. 2018) (following *Williams* in the context of a summary judgment motion).

## B.    Analysis

Defendants contend that plaintiff failed to exhaust his administrative remedies regarding his claims against defendants Oliviera, Farooki, and Presser because he did not complete the three step grievance process available at Clinton. Defendant Atkinson has not raised the exhaustion issue in this summary judgment motion.[2]

---

[1] My summary of *Williams* tracks that of Magistrate Judge Stewart in *Berman v. Durkin*, No. 9:13-CV-136 (LEK/DJS), 2017 WL 1215814, at *8 (N.D.N.Y. Mar. 10, 2017), (Rep't-Rec.), *adopted*, 2017 WL 1207834 (N.D.N.Y. Mar. 31, 2017).

[2] Plaintiff appears to have exhausted his administrative remedies with regard to his claim against defendant Atkinson, because he filed a grievance against her and other Upstate medical staff on March 12, 2014, and then appealed the denial of that grievance to the Upstate superintendent and the CORC. (Dkt. No. 57-3, at 61-69).

In *Ferrer v. Racette*, Chief District Judge Glenn T. Suddaby explained, in the context of a summary judgment motion, who bears the burden of proof and production on certain aspects of the issue of exhaustion:

> "Because failure to exhaust is an affirmative defense, . . . defendants bear the initial burden of establishing, by pointing to 'legally sufficient sources' such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute." . . . "[O]nce a defendant has adduced reliable evidence that administrative remedies were available to the plaintiff and that the plaintiff nevertheless failed to exhaust those administrative remedies, the plaintiff must then 'counter' the defendant's assertion by showing exhaustion [or] unavailability."

*Ferrer v. Racette*, No. 9:14-CV-1370 (GTS/DJS), 2017 WL 6459525, at *12 (N.D.N.Y. Dec. 18, 2017) (citing, inter alia, *Hubbs v. Suffolk Cnty. Sheriff's Dept.*, 788 F.3d 54, 59 (2d Cir. 2015) ("If the defendants meet this initial burden, administrative remedies may nonetheless be deemed unavailable if the plaintiff can demonstrate that other factors . . . rendered a nominally available procedure unavailable as a matter of fact.")[3] *Accord*, *Scott v. Kastner-Smith*, 298 F. Supp. 3d 545, 554-55 (W.D.N.Y. 2018) (pending appeal).

Defendants have established, and plaintiff agrees, that a grievance process existed at Clinton and other DOCCS facilities during the relevant time period, and that plaintiff was aware of such process. (Dkt. No. 57-1, Statement of Material Facts, ¶ 2;

---

[3] I agree with Magistrate Judge Peebles' cogent analysis that, while the burden of production may shift to a plaintiff with respect to certain aspects of the exhaustion issue, "the ultimate burden of proof with respect to the exhaustion defense remains, at all times, with the defendant." *See, e.g., Bailey v. Fortier*, No. 9:09-CV-0742 (GLS/DEP), 2012 WL 6935254, at *5-6 (N.D.N.Y. Oct. 4, 2012) (Rep't-Rec.), *adopted*, 2013 WL 310306 (N.D.N.Y. Jan. 25, 2013); *Nelson v. Plumley*, No. 9:12-CV-422 (TJM/DEP), 2015 WL 4326762, at *7-8 (N.D.N.Y. July 14, 2015) (Rep't-Rec.), *adopted*, 2013 WL 1305338 (N.D.N.Y. Mar. 18, 2013).

Dkt. No. 57-6, "Seguin Decl." ¶¶ 1, 4; Dkt. No. 64, Pl.'s Response to Statement of Material Facts, ¶ 2). Therefore, the exhaustion inquiry will center on whether plaintiff can demonstrate that those established grievance procedures were, for practical purposes, unavailable to him while he was housed at Clinton.

In support of their motion, defendants have provided a declaration from Christine Gregory, a non-party to this proceeding who supervises the Clinton IGP. (Dkt. No. 57-5, "Gregory Decl." ¶¶ 2-3). Ms. Gregory stated that she searched her office's records and found no grievances filed by plaintiff between November 13, 2013 and March 2014. (Gregory Decl." ¶¶ 4-6). In addition, there are no records of any grievance appeals to CORC related to plaintiff's confinement at Clinton. (Seguin Decl. ¶ 6).

In opposition to defendants' motion, plaintiff submitted a copy of a grievance dated March 3, 2014 that raised concerns about his dental care at Clinton over a three month period, including the repeated refusal to extract plaintiff's upper right molar and lower left molar. (Dkt. No. 64-2, at 141). Plaintiff contends that he was confined in the Clinton Special Housing Unit ("SHU") when he prepared the grievance, so he placed the grievance letter on his cell bars for a Clinton correctional officer to collect and deposit in the facility mail-box. (Am. Compl. ¶ 9; Pl.'s Decl. ¶ 8). He was never assigned a grievance number or received any response to this grievance. (Pl.Decl. ¶ 10).

Relying on this apparently unfiled grievance and the line of cases following *Williams*, plaintiff contends that grievance procedures were unavailable to him, as a practical matter, while he was confined in Clinton SHU. A plaintiff's unverifiable contention that his grievance or appeal must have been lost or destroyed is generally

not enough to defeat a motion for summary judgment.  *See, e.g.*, *Rodriguez v. Cross*, No. 15-CV-1079 (GTS/CFH), 2017 WL 2791063, at *7 (N.D.N.Y. May 9, 2017) (Rep't-Rec.), *adopted*, 2017 WL 2790530 (N.D.N.Y. June 27, 2017) ("Courts in this Circuit have continuously held that mere contentions or speculation of grievances being misplaced by officers do not create a genuine issue of material fact when there is no evidence to support the allegations.") (collecting cases); *Chambers v. Johnpierre*, No. 3:14-CV-1802, 2016 WL 5745083, at *6-7 (D. Conn. Sept. 30, 2016) (plaintiff's unsupported statements that he filed grievances and grievance appeals before his transfer to another facility "do not create an issue of fact with regard to the exhaustion of his claims").

In this case, plaintiff has consistently alleged that he filed a grievance on March 3, 2014, and provided documentary evidence to support that claim. (Am. Compl. ¶ 14; Dkt. No. 57-3, Ex. 9 to Moore Decl., Deposition Transcript ("Depo.") at 18[4]; Pl. Decl. ¶ 8; Dkt. No. 64-2, at 141).  This documentary evidence is one of several factors, including plaintiff's necessary reliance on SHU officers to deliver his grievance and his subsequent transfer to another facility, that a fact-finder may consider when evaluating the question of exhaustion.  *See Medina v. Napoli*, 725 F. App'x 51, 52 (2d Cir. 2018) ("Medina, like [the plaintiff in *Williams*] was an inmate in a special housing unit who was required to rely on correction officers to file his grievances, and both Medina and Williams alleged that those officers intentionally discarded the grievances or prevented them from being filed").  In light of these factors, the exhaustion determination hinges

---

[4] Plaintiff's full deposition transcript is available at Dkt. No. 57-3, at 71-196.  I have cited to the original transcript pagination in this report-recommendation for ease of reference.

on the question of plaintiff's credibility.  Therefore, this court finds that summary

judgment is not warranted on the issue of exhaustion, with regard to plaintiff's claims

of inadequate medical care against defendants Oliviera, Farooki, and Presser.  In

reaching that recommendation, this court makes no finding on the ultimate question of

whether administrative remedies were actually available to plaintiff, within the meaning

of *Williams*.  I will now proceed to evaluate defendants' alternate ground for summary

judgment, that plaintiff failed to state a claim against any defendant.

## III.  <u>Medical Care</u>

### A.    **Legal Standard**

In order to state a claim based on constitutionally inadequate medical treatment,

the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate

indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

There are two elements to the deliberate indifference standard.  *Smith v. Carpenter*, 316

F.3d 178, 183–84 (2d Cir. 2003).  The first element is objective and measures the

severity of the deprivation, while the second element is subjective and ensures that the

defendant acted with a sufficiently culpable state of mind.  *Id.* at 184 (citing *inter alia*

*Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

### 1.    **Objective Element**

In order to meet the objective requirement, the alleged deprivation of adequate

medical care must be "sufficiently serious."  *Salahuddin v. Goord*, 467 F.3d 263, 279

(2d Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  Determining

whether a deprivation is sufficiently serious also involves two inquiries.  *Id.*  The first

question is whether the plaintiff was actually deprived of adequate medical care. *Id.* Prison officials who act "reasonably" in response to the inmates health risk will not be found liable under the Eighth Amendment because the official's duty is only to provide "reasonable care." *Id.* (citing *Farmer*, 511 U.S. at 844–47).

The second part of the objective test asks whether the purported inadequacy in the medical care is "sufficiently serious." *Id.* at 280. The court must examine how the care was inadequate and what harm the inadequacy caused or will likely cause the plaintiff. *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 32–33 (1993)). If the "unreasonable care" consists of a failure to provide ***any*** treatment, then the court examines whether the inmate's condition itself is "sufficiently serious." *Id.* (citing *Smith v. Carpenter*, 316 F.3d 178, 185–86 (2d Cir. 2003)). However, in cases where the inadequacy is in the medical treatment that was actually afforded to the inmate, the inquiry is narrower. *Id.* If the issue is an unreasonable delay or interruption of ongoing treatment, then the "seriousness" inquiry focuses on the challenged delay itself, rather than on the underlying condition alone. *Id.* (citing *Smith*, 316 F.3d at 185). The court in *Salahuddin* made clear that although courts speak of a "serious medical condition" as the basis for a constitutional claim, the seriousness of the condition is only one factor in determining whether the deprivation of adequate medical care is sufficiently serious to establish constitutional liability. *Id.* at 280.

## 2.  Subjective Element

The second element is subjective and asks whether the official acted with "a sufficiently culpable state of mind." *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 300

(1991)).  In order to meet the second element, plaintiff must demonstrate more than a

"negligent" failure to provide adequate medical care.  *Id.* (citing *Farmer*, 511 U.S. at

835–37).  Instead, plaintiff must show that the defendant was "deliberately indifferent"

to that serious medical condition.  *Id*.  Deliberate indifference is equivalent to

subjective recklessness.  *Id.* (citing *Farmer*, 511 U.S. at 839–40).

In order to rise to the level of deliberate indifference, the defendant must have

known of and disregarded an excessive risk to the inmate's health or safety.  *Id.* (citing

*Chance*, 143 F.3d at 702).  The defendant must both be aware of the facts from which

the inference could be drawn that a substantial risk of serious harm exists, and he or she

must draw that inference.  *Chance*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511

U.S. 825, 837 (1994)).  The defendant must be subjectively aware that his or her

conduct creates the risk; however, the defendant may introduce proof that he or she

knew the underlying facts, but believed that the risk to which the facts gave rise was

"insubstantial or non-existent."  *Farmer*, 511 U.S. at 844.  The court stated in

*Salahuddin* that the defendant's belief that his conduct posed no risk of serious harm

"need not be sound so long as it is sincere," and "even if objectively unreasonable, a

defendant's mental state may be nonculpable."  *Salahuddin* 467 F.3d at 281.

Additionally, a plaintiff's disagreement with prescribed treatment does not rise to

the level of a constitutional claim.  *Sonds v. St. Barnabas Hosp. Correctional Health

Services*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001).  Prison officials have broad

discretion in determining the nature and character of medical treatment afforded to

inmates.  *Id.* (citations omitted).  An inmate does not have the right to treatment of his

choice. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986). Because plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation. *Id.*

Disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment. *Sonds*, 151 F. Supp. 2d at 312 (citing *Estelle v. Gamble*, 429 U.S. at 107). Even if those medical judgments amount to negligence or malpractice, malpractice does not become a constitutional violation simply because the plaintiff is an inmate. *Id.; see also Daniels v. Williams*, 474 U.S. 327, 332 (1986) (noting that negligence is not actionable under § 1983). Thus, any claims of malpractice, or disagreement with treatment are not actionable under § 1983.

### B.    Analysis

#### 1.    Objective Element

In this case, plaintiff has provided sufficient evidence showing a genuine issue of fact with respect to the objective element. Plaintiff alleges that he required multiple dental appointments and sick-call visits to address severe tooth pain that affected his ability to eat and sleep, and was accompanied by an infection that required antibiotics. These allegations are consistent with the medical evidence in the record. (Dkt. Nos. 59, 59-1, 59-2, 59-3). These conditions have frequently been found to constitute a sufficiently serious medical condition that satisfies the first element of an Eighth Amendment medical indifference claim. *See Chance v. Armstrong*, 143 F.3d 698, 702-703 (2d Cir. 1998) (objective element met where plaintiff's alleged extreme pain from

abscessed tooth prevented him from eating); *Washington v. Farooki*, No. 9:11-CV-1137, 2013 WL 3328240. at *7 (N.D.N.Y. July 2, 2013) (tooth pain that prevented plaintiff from eating or sleeping, required treatment with prescription pain medication and antibiotics, and prompted placement on root canal waiting list was likely a sufficiently serious medical condition).

### 2.    Subjective Element

Even though plaintiff may meet the objective element, summary judgment for the defendants is still appropriate, because plaintiff's claims fail to satisfy the subjective prong of the deliberate indifference standard against any of the defendants.

### 1.    Dental Care at Clinton (Oliveira, Farooki, Presser)

Plaintiff was first treated by defendant Oliveira on December 6, 2013. (Am. Compl. ¶ 10). Dr. Oliveira's records show that this was a regular medical call-out, not an emergency visit. (Oliveira Decl. ¶ 4; Dkt. No. 59-3, at 7). Plaintiff recalled telling defendant Oliveira that he was in significant pain. (Depo. at 36). Plaintiff testified that he received an x-ray at this visit, and was prescribed an antibiotic and pain medication.[5] (Depo. at 36-37). Dr. Oliveira placed plaintiff on a waiting list for extraction of the upper right and lower left molars. (Am. Compl. ¶ 11; Depo. at 36; Oliveria Decl. ¶ 6). This waiting list was first-come, first serve. (Oliveira Decl. ¶ 6).

Plaintiff saw Dr. Oliviera again on January 14, 2014, on an emergency sick call. (Depo. at 41-42). Medical records show that plaintiff was prescribed antibiotics and

---

[5] Dr. Oliveira reviewed his medical records and concluded that he did not prescribe any medications at the December 6, 2013 visit, but he did place plaintiff on the waiting list for extraction.

pain medication. (Oliveira Decl. ¶ 7). Plaintiff asked that the dentist perform an extraction immediately, but Dr. Oliveira refused. (Pl. Decl. ¶ 4). In Dr. Oliveira's opinion, extraction of an infected tooth posed a significant risk of spreading the infection. (Oliveira Decl. ¶ 8).

Plaintiff had another emergency dental examination on January 22, 2014, performed by defendant Farooki. (Dkt. No. 57-7, "Farooki Decl." ¶ 4; Depo. at 44). Defendant Farooki diagnosed plaintiff with an abscess, and prescribed an antibiotic and a pain medication. (Farooki Decl. ¶ 4; Depo. at 45-46). Dr. Farooki's medical records showed that plaintiff's lower left molar, a wisdom tooth, "was badly decayed and broken down, could have required a surgical extraction, and it was absolutely necessary to resolve the infection before going forward with such a procedure." (Farooki Decl. ¶ 5). Plaintiff requested that the extraction be performed immediately, and was willing to sign a waiver or consent form if it meant that the procedure could be performed more quickly. (Depo. at 44-45). In Dr. Farooki's opinion, "the presence of acute infection is a reason not to proceed with extraction and wait for the infection to resolve." (Farooki Decl. ¶ 5). Dr. Farooki refused plaintiff's request for an immediate extraction. (Am. Compl. ¶ 21).

Plaintiff's final dental examination at Clinton was performed by defendant Presser on February 27, 2014. (Depo. at 46-47; Dkt. No. 57-4, "Presser Decl." ¶ 4). During this emergency sick call, Dr. Presser found that the upper right and lower left molars were badly decayed and infected. (Presser Decl. ¶ 4). He prescribed antibiotics and pain medication to address the infection. (*Id*.) Plaintiff against requested an

immediate extraction due to the pain. (Depo. at 48).  Defendant Presser refused this request and, aware that plaintiff was already on the waiting list for extraction, focused on treating the infection so that the extraction could occur. (Presser Decl. ¶¶ 5-6). In Dr. Presser's medical opinion, immediate extraction would not have been appropriate, and the better option was to resolve the infection before surgery. (*Id*.)

Plaintiff contends that these three dentists' refusal to immediately extract his infected teeth at Clinton unnecessarily prolonged his excruciating pain, sleep deprivation, and difficulty eating by several months   (Am. Compl. ¶ 21).  Defendants Oliveira, Farooki, and Presser do not dispute that they refused plaintiff's request, but contend that their decisions were motivated by a desire to prevent plaintiff's infection from spreading. (Oliveira Decl. ¶ 8; Farooki Decl. ¶ 5; Presser Decl. ¶ 5).  Plaintiff's insistence on an expedited surgery may be understandable in light of the significant tooth pain that he described in his pleadings.  However, that pain does not convert plaintiff's disagreement on proper dental treatment into a viable Eighth Amendment claim.  *Sonds*, 151 F. Supp. 2d at 312   In addition, it is clear that all three dentists took active measures to diagnose plaintiff's condition, alleviate his pain, and heal the infection.  *See Webley v. Hartmann*, No. 03-CV-596 (LEK/DRH), 2005 WL 1520852, at *3 (N.D.N.Y. June 27, 2005) (inmate received constitutionally adequate medical care where dentist performed x-ray and prescribed antibiotics and pain medication while plaintiff awaited tooth extraction).  Therefore, this court recommends that defendants Oliveira, Farooki, and Presser be granted summary judgment.

### 2.    Emergency Sick Call at Upstate (Atkinson)

Soon after his transfer from Clinton to Upstate on March 7, 2014, plaintiff sought medical attention for his tooth pain. (Am. Compl. ¶ 16).  On March 10, 2014, defendant Atkinson, responded to plaintiff's emergency sick call request. (Am. Compl. ¶ 22).  She checked plaintiff's vital signs and examined his mouth. (Am. Compl. ¶ 22; Depo. at 68-69).  According to defendant Atkinson's contemporaneous treatment notes, plaintiff did not appear in distress, and showed no facial swelling, drainage, or signs of infection. (Dkt. No. 57-9, "Atkinson Decl." ¶ 5).  Defendant Atkinson advised plaintiff that his tooth pain was not an emergency, and that he should have sought assistance during the regular sick call held earlier that morning. (Depo. at 68).  She then advised plaintiff of the proper sick call procedures at Upstate, in a manner that plaintiff described as rude. (Atkinson Decl. ¶ 7; Depo. at 69).  Plaintiff alleges that defendant Atkinson then threatened to issue a misbehavior report for abusing the emergency sick call procedures. (Am. Compl. ¶ 22).  Defendant Atkinson states that she departed after plaintiff became argumentative with her, but she did not threaten any disciplinary action. (Atkinson Decl. ¶ 7).  No misbehavior report was issued.

The next day, plaintiff was evaluated by a different nurse, and was referred to a dentist after showing symptoms of infection, including a slight fever. (Depo. at 70; Dkt. No. 59-1, at 8).  Medical records show that this dentist, who is not a party to this action, extracted plaintiff's upper right molar on March 11, 2014. (Depo. at 71; Dkt. No. 59-1, at 9).  His left lower molar was extracted on or about June 12, 2014. (Am. Compl. ¶ 20).

Plaintiff concedes that defendant Atkinson examined his mouth on March 10,

2014, and her records do not reflect any signs of distress or infection. At most, plaintiff has alleged that defendant Atkinson was negligent by not immediately referring him for dental treatment or evaluation.[6] However, it is well settled that negligence is insufficient to support a deliberate indifference claim. *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010). The deliberate indifference standard "requires that only the deliberate infliction of punishment, and not an ordinary lack of due care for prisoner interests or safety, leads to liability." *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999). Accordingly, plaintiff has failed to allege that defendant Atkinson acted with a sufficiently culpable state of mind when she failed to treat plaintiff's tooth pain as a medical emergency. Therefore, this court also recommends that defendant Atkinson's motion for summary judgment be granted.[7]

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 57) be **GRANTED**, and that plaintiff's Amended Complaint (Dkt. No. 33) be **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file

---

[6] Plaintiff's argument could also be construed as asserting that defendant Atkinson caused his dental surgery at Upstate to be delayed by a day. However, a one day delay in treatment is generally insufficient to state a deliberate indifference claim. *See Chatin v. Artuz*, 28 F. App'x 9, 11 (2d Cir. 2001).

[7] Defense counsel also argued that all defendants were entitled to summary judgment on qualified immunity grounds. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Because this court has found that the defendants have not violated the plaintiff's rights in the first instance, it need not reach the issue of whether a reasonable person would have known of a violation.

written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated: December 28, 2018

Hon. Andrew T. Baxter
U.S. Magistrate Judge